Good morning, Your Honors. My name is Portia Hampton Flowers. I represent Officer Ficcadenti in an appeal from the District Court's denial of Officer Ficcadenti's request for qualified immunity. The court denied the motion for qualified immunity to apply to Officer Ficcadenti's use of an arm bar takedown technique on Mr. Neal during the investigation of a 911 call where the police department received a report of a man with a gun outside of a local bar that had a history of criminal activity, including drug use and drug sales, as well as weapons complaints. Officer Ficcadenti is entitled to qualified immunity for his use of force because at the time that the force was used, there was no clearly established law indicating that it would be a violation of an individual's constitutional rights to use that type of force. And this incident happened in June of 2012. In June of 2012. So let me ask, are you conceding that there was in fact an excess of force used here? No, Your Honor. Okay, because you went right to the clearly established question rather than the existence of a violation. force was used to put reasonable officers on notice that it would have been a violation of a constitutional right to do so. What about Shannon versus Kohler and Brown versus City of Golden Valley? Shannon versus Kohler was decided in 2010. Since that, and in Shannon versus Kohler, which has very distinct and different facts from this case, in Shannon you had an incident where there was a report of two women fighting at a bar. When the officer arrived on scene, the individual, Mr. Shannon, approached the officer and there was no report of weapons in that case. There was no threat to the officer's safety in that case. The plaintiff, Mr. Shannon, was not a suspect. There was no failure to comply with commands in that case. In that case, the officer used a leg sweep, which was an untrained, unauthorized technique. Shannon was decided in 2010, and since Shannon was decided, this court has decided... Let's talk a little bit about the facts, though. At the time the arm bar was applied, wasn't the plaintiff compliant? At the time the arm bar was applied, the plaintiff was still behaving erratically. This case started... Mr. Neal's encounter with the police started when he was commanded to get out of the vehicle. And when he got out of the vehicle, he spent 45 seconds wandering around the car. I've watched the video. There were dogs barking. There were multiple officers yelling multiple commands. It seemed quite reasonable to me that he didn't know which direction to go. He had officers in three different directions yelling for him to come here kind of thing. It could be interpreted as being noncompliant. But at some point, we recognized that the defendant was the one who was calling him and walked in that direction, in what seemed to me to be a relatively compliant way. What Mr. Neal did was he put the officers in a position where their safety was at risk. By his wandering around the vehicle for 45 seconds, his turning around and putting his back to the officers, when they told him to come towards them with his hands raised, he dropped his hands to his waist five times. And when he did finally attempt to approach the officers, he did not have his hands raised. He had his hands stretched out. And so what the officers are forced to do in that situation— I don't recall that. When he walked toward him, he did this a couple times. Yes, Your Honor. Okay. I think indicating, do you want me? And he was walking toward, I don't know if it was your client who had the dog, but the dog was right there. His hands looked pretty visible to me. And he also didn't match the description of the person who allegedly had the gun, right? There were descriptors that fit and descriptors that didn't. What fit? Just the black car? No. He was a middle-aged African-American male outside of Bourns Bar in a black vehicle. If you look at the video, I mean, you start off, it appears there's a great deal of confusion. There's dogs barking. There's officers hollering directions, three of them. He starts one way, looks back another way, turns around, looks at the other passenger, apparently trying to figure out where am I supposed to go, what am I supposed to do. At least that's an inference you could draw. And then—and all that time, you know, you look at it, the officers are obviously concerned. They've got heightened fear because immediately their weapons are drawn. It's a neighborhood that they feel somewhat unsafe in. I get all that. But at some point, he turns, he starts walking towards your client, hands kind of up, down, out, pointing to himself a couple of times, and then his hands are up and in front of him as he gets there, and he's grabbed and thrown to the ground. Now, at some point, all this early confusion, isn't it too remote to really give rise to this reasonable fear on the part of the officer? No, Your Honor, it is not too remote. Why not? Because the officers are not required to abandon the information that they received within a 60-second time period and pretend as though it didn't happen. This court has even said, most recently in Kravener v. Schuster, that officers may seize a person in order to ensure the safety of the public and or the individual, regardless of any suspected criminal activity. An unarmed and passively resisting subject can pose a threat necessitating the use of a taser. This court ruled in Kravener v. Schuster on allowing the use of a taser in March of 2018. Prior to that decision, this court has twice ruled on the use of an armbar takedown technique in circumstances similar to this one. The most similar being Investor v. Halleck, which was decided in, I believe, August or July of 2017. There was a report of a man at a bar with a knife. When the officer arrived on scene, the individual was seated in a vehicle, and he was given five commands to exit the vehicle. Eventually, he exited the vehicle. Once he exited the vehicle, he was given two or maybe three commands to put his hands up and get on his knees or get on the ground. He didn't comply with those commands. Instead, he turned his back to the officers and put his hands on the vehicle. The officer used an armbar takedown, very similar if not identical to the one used by Officer Ficcadente, and put Mr. Vester on the ground. Is it fair in that case, though, that the officer was there by himself, and here we had a whole team of officers with guns drawn? I mean, isn't the threat posed to the officer much greater in Vester, since he's there alone? Not necessarily, because in this case, not only did we have more than one officer on scene, we also had an individual, a third man that was in the car with Mr. Neal that had not been secured. The driver of the car exited the vehicle, and he complied with all of the officer's commands and was taken into custody within 20 seconds. Mr. Neal took almost a minute and a half to comply with the officer's commands to be taken into custody. And during that minute and a half, the third occupant of the vehicle, Mr. Lee, was still unsecured and by the vehicle. And if the court would review that videotape again, you can see there is a point at which Mr. Neal not only walks around the car, he walks behind the car and passes by the third occupant that is standing outside near the vehicle. The officers are in a precarious situation. They don't know where the gun is. They don't know if Mr. Neal has the gun. They don't know if the third occupant of the vehicle has the gun. But what they do know is Mr. Neal is not complying, and they need to get control of that situation as quickly as possible. And their alternatives are, when Mr. Neal gets closer, continue to give him commands which he may or may not respond to, like he failed to respond to in the first 60 seconds, take a risk that he's going to do something even more harmful to the officers than simply putting them at risk, or get him under control as quickly as possible. And the use of the arm bar technique is what the officer made the decision to use at that time. And the Fourth Amendment allows officers to make that judgment. They are allowed to make mistakes unless they are plainly incompetent. And this court's decision investor, where it granted qualified immunity to an officer that behaved in almost the exact same manner as Officer Ficcadente did, says that Officer Ficcadente was not behaving in a plainly incompetent manner, and in fact had no reason to believe in June of 2012 that use of an arm bar technique on Mr. Neal would have been unconstitutional. What do we do with the, I think, reality that the law was more clearly established in favor of the plaintiff in 2012 than it is today? Well, I don't know that I would agree that the law was more clearly established in favor of the plaintiff in 2012 than it is today. Plaintiffs have been citing Brown and Shannon now consistently for the last three years and unsuccessfully. Those precedents didn't exist in 2012. But Hicks, which was decided in 2011, did exist. Hicks was the first case in Hicks v. Norwood is the first case in which this court looked at the use of an arm bar takedown. And there, this court upheld the use of an arm bar takedown on a belligerent suspect that was already in custody during the booking process. That decision did not put officers on notice that it would have been unconstitutional to use an arm bar takedown on a passively resistant suspect. So, Shannon, I think, was pushed aside in terms of the seminal law in this circuit when this court decided Hicks v. Norwood. The facts in Vester and this case are similar. The risk confronting the officers in both cases are comparable. Plaintiff's noncompliance in Vester is virtually indistinguishable from Neal's noncompliance in this case. There's no justification for treating Officer Ficcadente's use of force differently than the use of force in Vester. And I respectfully ask that this court reverse the district court decision and grant qualified immunity to Officer Ficcadente for the use of an arm bar takedown technique on Mr. Neal. I'll reserve the rest of my time. Thank you. Thank you, counsel. Mr. Nelson. May it please the court, opposing counsel, I would like to pick up on the point that was raised by opposing counsel on the Vester case. I think that the Vester case is factually a vastly different case than this case. Number one, the Vester case was not a case of mistaken identity. So in Vester, this was not a situation where they had the wrong guy. In the Vester case, they, in fact, had the right individual. That doesn't help you much, though, because the officers didn't know that for sure at the time, did they? That they had the right individual? Or the wrong individual? They perhaps did not know it at the time, but I would argue that that was the reality of the situation. But we don't look at it at hindsight. Yeah, and you're going to run flat into the reasonable but mistaken belief doctrine anyhow if you go that direction. Well, but another factor that I feel is important here, Your Honor, is that in Vester, we had a situation where the assailant, the alleged assailant, reportedly had a knife that he had threatened to stab someone with. In this particular case, Your Honor, the facts that underlie the complaint. Threatened to get another knife. Yes, that's correct, Your Honor. He threatened to get another knife. But in this particular, in the Neal case, again, no gun was found on his person. Also, in the Vester case, there was undisputed evidence that he was noncompliant. The police asked him to get down on his knees, and the undisputed record shows that he did not do that. In this particular case, I believe the undisputed record shows the opposite. Judge Grudner, as you emphasized in the Shannon versus Kohler decision, Mr. Neal's version of the facts here have to be adopted as true. Unless they're squarely contradicted by other evidence in the case. And here, there is nothing to squarely contradict the evidence that Mr. Neal was completely compliant with everything that Officer Ficcadenti asked him to do. Well, I mean, I think a reasonable argument can be made. He wasn't compliant in the beginning. You know, he kind of walked in circles, turned his back on the officers. Took a long time to walk toward Officer Ficcadenti. I mean, I think you have a decent argument. And we have the video, so there really isn't a lot to be in dispute here. We do have the video, Your Honor. And then we also have Officer Ficcadenti's testimony that ultimately my client was compliant. And then also, Your Honor, again. The officer testified that he was compliant? Well, the officer testified specifically that when he asked Mr. Neal to put up his hands and walk towards him, that that's what Mr. Neal ultimately did. I also think, Your Honor, that a reasonable... Was he asked why he took him down so hard at that point, then? Your Honor, I believe he was asked that at his deposition, and his response was that Mr. Neal was a distraction at the scene, and he felt like he needed to get him to the ground as soon as possible. But I also believe, Your Honor, that a reasonable officer at the scene would view Mr. Neal's, if we want to say delayed compliance, not as passive resistance, but as confusion as to exactly what he was supposed to do. As you alluded to, Your Honor, there were multiple officers at different positions shouting out various commands to him. And I believe that the squad car video evidence clearly shows a willingness to try to do what the officers were asking him to do, but a confusion as to who was asking him to do it and what they were asking him to do. So I believe that a reasonable officer... Pardon me, Your Honor? Well, I can't remember the name of the case I wrote, Apersback or something like that. The chap in the woods who was waving what turned out to be a toy gun, and they killed him because he was surrounded by officers. And there was a news helicopter overhead that had a video of it, and it showed that he might have been putting his hands up or he might have been slipping and falling and waving the gun because he had lost his balance. But they were granted qualified immunity. I think in this particular case, Your Honor, when you view the squad car video evidence, generally Mr. Neal's hands are up the entire time. And it's pretty clear from the squad car video evidence that there's absolutely nothing in his hands while this event is transpiring. So I think the facts of this case are a bit different than the facts of the case that you just alluded to. I also think it's important to emphasize again, Your Honor, that they had the wrong guy. I mean, Officer Ficodanti, he did not even come close to arresting the correct suspect. The report came in that the gentleman who purportedly had taken this gun out of his black four-door sedan and taken it back into the bar, this gentleman was reported to be of a large build and wearing a red and white shirt. When Mr. Neal stepped out of that vehicle, it should have become abundantly clear to all the officers at the scene, including Officer Ficodanti, that this was not the right suspect. This court held in the Noe v. Storley case that officers had to take account of information that emerges after they arrived on the incident scene. And I believe that a reasonable officer at the scene... A point, it seems to me, what troubles me in the other direction is if they've got the right car, and there are three people, and a gun was once in the car, until they have all three people controlled, there still is... If one of the three was the right suspect, because they've got the right car, there's still danger inherent in the situation. And the need to control each of the three, and then do they need to do this to control Mr. Neal, is a tough issue. Yeah, and I would argue, Your Honor, that there wasn't even passive resistance here on behalf of Mr. Neal. Again, one could argue that there was delayed compliance. I think the squad car video evidence clearly shows that that compliance was due to confusion on Mr. Neal's part. What time of day, night was it? This was in the very late hours, Your Honor. Closing hours of a Wright Street bar? They're always leery of those situations. They are, Your Honor. I would also like to emphasize that none of the suspects that were called out of the vehicle closely matched the description of the suspect that the police were looking for. Was Lee out of the vehicle by then? Lee was called out of the vehicle first. He didn't have on a red and white shirt. I thought Lee was the other passenger. Maybe I've got the names wrong. I believe that Mr. Lee was the driver. I believe. Anyway, was the other passenger out of the car before the takedown of Neal? No, he was not, Your Honor. As I understand the facts, you're right about the driver. He was immediately compliant and didn't look like a reported suspect. Wasn't the other passenger outside the car and standing behind the car? Because isn't that the guy that he went to and turned around and kind of walked behind as he was confused in that first 45 seconds? Well, both the passengers were called out of the car at the same time, and you're correct. So there was a gentleman. They both got out. They were standing side by side to one another, and then they called out black. Black shirt. Correct. And what's going on at the time that the armbar technique is applied, as I understand it, is my recollection of what I read in the video, is that Neal is obviously being taken down. The driver is obviously in custody, and the other passenger is standing still by that car. That is correct, Your Honor. I believe that that is a correct description of what the squad car video shows. Okay. So, Mr. Nelson, what's your best case that this use of force was clearly established at the time? Your Honor, the Shannon versus Kohler case, I believe, recites a principle here that is applicable and very specific, and I'll just briefly cite it. Assuming then that Shannon's story is true, and this is Your Honor's language, assuming he was not threatening anyone, not resisting arrest, and so on, it was not reasonable for Officer Kohler to use more than de minimis force against him. I would argue here, Your Honor, that Mr. Neal was not threatening, resisting, or fleeing from Officer Ficcadanti in the face of the commands that he was given. And I think Your Honor made clear in the Shannon decision, and I believe it was made clear in the Brown decision as well, that under these circumstances, more than de minimis force should not be employed to arrest a suspect. And in this particular case, we have an officer who slammed Mr. Neal to the ground, front side first, to the pavement, even though he was complying and earnestly seeking to comply with everything that the officers asked him to do. His hands are gently raised during the entire incident. There's clearly nothing in his hands while they're raised. Again, Your Honor, we would argue that we have a suspect here who was not even passively resistant to what the officers were asking him to do. In the Brown case as well, Your Honor, just to briefly quote, moreover, it is clearly established that force is least justified against non-violent misdemeanors who do not flee or actively resist arrest and pose little or no threat to the security of officers of the public. Judge Loken, I know that you believe that there's a question there about sort of the security concern here. Again, I would argue that once Mr. Neal stepped out of that vehicle, the perceived safety risk should have been greatly minimized in Officer Ficcadanti's mind, if not eliminated, because it should have been clear to him at that point that this isn't the right guy. You've got the wrong suspect. The Supreme Court in probably three or four decisions ending in White v. Pauley, or maybe they've had another one since, has scolded the circuits for not understanding the specificity with which the clearly established doctrine has to be applied and the cases have to be beyond debate and so forth. Has any circuit discussed what the implications of that scolding are when we come up and are trying to comply with the Supreme Court's new instructions in more recent cases? And then we get a case like this that comes from the era that was scolded. What should we do with that? Well, one point that the Supreme Court made clear in the – Has any circuit to your knowledge addressed that in those terms? Because I don't think we have. I have not come across a decision, Your Honor. I mean, I – It's conceptually more than tricky. Very much so, I would agree. I would say that the Supreme Court emphasized in the Pauley decision that a general statement of the law is not inherently incapable of putting an officer on notice that his actions are unlawful. The Court just emphasized that the law must put that officer on notice that his conduct is unlawful in an apparent fashion. And I think, again, the – The people that you quoted from Shannon, you know, if you've got a non-resistant, unarmed, basically controlled person don't use more than de minimis force, they haven't said that's wrong. No, they have not, Your Honor. It's applying that to cases where those factors are not crystal clear, so to speak. I would agree with that, Your Honor. Your Honor, I would cede the rest of my time to opposing counsel. I thank the Court for its time. You have some rebuttal. I think you have both framed the issue well, but you certainly have rebuttal time remaining. Your Honor, there are two points that I would like to address. First, with regard to the argument that Mr. Neal was complying or beginning to comply or that he had only shown delayed compliance. When this Court decided Hosea v. City of St. Paul in August of last year, this Court granted qualified immunity to officers that were responding to a 911 hang-up call and encountered a man standing over his then-fiancee in a bladed stance, gave him, according to the undisputed facts, two commands to get down. He began to get down, one knee first, one hand on the floor, and then the officers, according to the plaintiff's version of the facts, tackled him, jumped on his back. And in that case, this Court granted qualified immunity to those officers even though this Court recognized that Hosea, David Hosea v. City of St. Paul, even though this Court recognized that the suspect or plaintiff in that case had begun to comply. The Court allowed the officers to use the force they deemed necessary to control the individual because of the threat that, in that case, he posed to the fiancée who was crying within striking distance of him. The other point I'd like to address is the confusion aspect that a plaintiff raised with regard to Mr. Neal not quite knowing what to do. And I would submit to this Court, as it has ruled in Ehlers, the subjective intent of the suspect is not relevant. The focus has to be on whether a reasonable officer could have interpreted that person, the suspect, Mr. Neal's conduct, as resistance. It was passive resistance, and for that reason, and based on this Court's ruling in Vesters and Ehlers and Hosea— I'm not sure I understand what you mean by that. Passive resistance, one example of that is, I believe it was the Brossard case, where officers ordered an individual to move over in the vehicle to make room for another suspect. The individual moved mere inches. Sitting on your hands instead of holding them out to be cuffed. Yes, this Court called that passive resistance. So what was passive resistance here? He was walking toward— Not doing what the officers asked. For instance, in Vesters— At some point 30 seconds earlier, I agree with you. At the point of the application of the force, I didn't see any resistance at all. At that second that the force was used, he may not— Or 10 seconds before that. Well, I won't get into that debate, because I do believe that Mr. Neal was not entirely compliant. But I would refer this Court back to its decision in Hosea, where compliance had begun, and this Court authorized the use of force and granted qualified immunity because of the totality of the circumstances. And the totality of the circumstances in this case warranted the officer making the judgment that force was needed to bring Mr. Neal into control so that they could continue their investigation. And I respectfully ask that this Court reverse the District Court's decision and grant qualified immunity to Officer Ficcadente. Thank you. Thank you, Counsel. The case has been very well briefed and argued, and we'll take it under dialogue.